IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PETER BARILE AND
JON WOLLES,

    Plaintiffs,

vs.	Civ. No. 20-195 KG/JFR

JAGUAR LAND ROVER NORTH AMERICA, LLC,

    Defendant.

MEMORANDUM OPINION AND ORDER

    This matter comes before the Court upon Plaintiffs' Motion to Remand to State Court and Memorandum in Support (Motion to Remand), filed April 3, 2020. (Doc. 9). Defendant filed a response on April 20, 2020, and Plaintiffs filed a reply on April 30, 2020. (Docs. 10 and 11). Having reviewed the Motion to Remand and the accompanying briefing, the Court denies the Motion to Remand.

*I. Background*

    *A. The State Court Complaint (Doc. 1) at 8-17*

    Plaintiffs filed this defective vehicle and breach of warranty case in state court in December 2019. Plaintiffs allege that in April 2018 they purchased a 2018 Range Rover manufactured by Defendant for $84,828.[1] *Id.* at 9, ¶¶ 3-4. "In consideration for the purchase of the Range Rover," Defendant issued to Plaintiffs a four-year or 50,000 "mile bumper to bumper and powertrain" warranty "as well as other standard warranties…." *Id.* at 9, ¶ 6.

---

[1] The Court notes that the purchase agreement attached to the Complaint indicates that the total amount of the transaction, including taxes and fees, amounted to $89,867.52. (Doc. 1) at 16.

Shortly after Plaintiffs took possession of the Range Rover, Plaintiffs allege that they noticed the Range Rover had "non-conformities/defects." *Id.* at 9, ¶ 7.  Plaintiffs delivered the Range Rover to Defendant's dealer numerous times to repair the "non-conformities/defects," which remained uncorrected. [2] *Id.* at 9, ¶¶ 9-10.  As a result of these uncorrected "non-conformities/defects," Plaintiffs contend that they "lost confidence in the Range Rover's safety and reliability." *Id.* at 10, ¶ 14.

Plaintiffs, therefore, "revoked their acceptance of the Ranger Rover in writing." *Id.* at 10, ¶ 16.  According to Plaintiffs, "[a]t the time of revocation, the Range Rover was in substantially the same condition as at delivery except for damage cause by its own non-conformities/defects and ordinary wear and tear." *Id.* at 11, ¶ 17.  Plaintiffs allege Defendant refused the revocation. *Id.* at 11, ¶ 18.  Consequently, Plaintiffs sued Defendant.

Plaintiffs bring three Counts in their Complaint.  In Count I, Plaintiffs bring a breach of written warranty claim under the Magnuson-Moss Warranty Act (MMWA), a federal statute.  In Count II, Plaintiffs bring a breach of implied warranty claim under the MMWA.  For each MMWA cause of action, Plaintiffs seek compensatory damages and reasonable attorney's fees and costs. *Id.* at 12-14.  In Count III, Plaintiffs bring a New Mexico Motor Vehicle Assurance Act (New Mexico Lemon Law) claim.  For this cause of action, Plaintiffs seek either (1) a comparable vehicle to replace the Range Rover, or (2) "a repurchase of the vehicle with a full refund of the purchase price of the vehicle and all incidental and consequential damages…." *Id.* at 15.  Plaintiffs also seek reasonable attorney's fees and costs under Count III.  Plaintiffs do not seek a sum certain in the Complaint.

---

[2] Plaintiffs assert in their Motion to Remand that the Range Rover had accumulated 783 miles when they first complained to Defendant's dealer about "non-conformities/defects."  (Doc. 9) at 11.

2

*B. The Notice of Removal (Doc. 1)*

On March 5, 2020, Defendant removed the state case to federal court. In its Notice of Removal of Action Under 28 U.S.C. § 1441 (Notice of Removal), Defendant alleges federal jurisdiction on two grounds.

First, Defendant alleges federal diversity jurisdiction noting the diversity of citizenship between the parties and that the amount in controversy exceeds $75,000.[3] With respect to the $75,000 amount in controversy, Defendant states that "Plaintiffs claim damages for a new vehicle comparable to the Range Rover at issue or a full refund of the Range Rover's purchase price of $84,828, in addition to other damages, which are in excess of $75,000." (Doc. 1) at 2, ¶ 6.

Second, Defendant alleges federal question jurisdiction under the MMWA. The MMWA provides federal jurisdiction if the amount in controversy related to a MMWA claim exceeds "$50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in [the] suit…." 15 U.S.C. § 2310(d)(3)(B). With respect to the $50,000 amount in controversy, Defendant contends that Plaintiffs "are making claims for over $84,828, in addition to attorney's fees." (Doc. 1) at 3, ¶ 9. Defendant also states that "[a] reasonable diminution of value for the vehicle is more than $20,000 and attorney's fees in this matter likely will exceed $30,000." *Id.* at 3-4, ¶ 9. Accordingly, Defendant concludes that damages under the MMWA exceed the $50,000 amount in controversy necessary for the Court to acquire federal question jurisdiction.

---

[3] Plaintiffs do not dispute the diversity of citizenship of the parties. (Doc. 9) at 2.

Plaintiffs, however, challenge Defendant's assertions regarding (1) the $75,000 amount in controversy necessary to establish federal diversity jurisdiction, and (2) the $50,000 amount in controversy necessary to establish federal question jurisdiction under the MMWA.

C. *Evidence Regarding Amount in Controversy*

1. *Kelley Blue Book Trade-In Values*

Plaintiffs contend that the Range Rover accumulated 18,500 miles as of April 2, 2020. According to the Kelley Blue Book, the trade-in value of a 2018 Range Rover, in good condition, and with 18,500 miles, is $58,591. (Doc. 9-3) at 1. The Kelley Blue Book quotes a trade-in value on the same vehicle with the same mileage, but in fair condition, at $55,964.[4] *Id.* at 4. Plaintiffs assert that these quotes establish the present value of the Range Rover.

2. *Emails Between Counsel*

In August 2019, prior to the filing of this lawsuit, Plaintiffs' counsel emailed Defendant's counsel that Plaintiffs are no longer driving the Range Rover because of Defendant's failure to correct defects. (Doc. 11-2). Plaintiffs' counsel also made a settlement demand of $19,500, inclusive of attorneys' fees. *Id.*

On April 2, 2020, after Defendant removed the case and the day before Plaintiffs filed the Motion to Remand, Defendant's counsel emailed Plaintiffs' counsel asking her if she would stipulate to a $30,000 cap on attorneys' fees. (Doc. 10) at 13. That same day, Plaintiffs' counsel responded that Plaintiffs are not willing to stipulate to a cap on attorneys' fees. (Doc. 11-1) at 2. Plaintiffs' counsel further stated that Plaintiffs would not stipulate to an amount of controversy

---

[4] The Kelley Blue Book quotes Plaintiffs present state that the trade-in values are "valid for your area through 04/02/2020." (Doc. 9-3) at 1 and 4.

4

of $75,000, "exclusive" of attorneys' fees and costs.[5] (Doc. 11-1) at 1-2; (Doc. 11) at 3 n.1. In addition, Plaintiffs' counsel made the following settlement demand: either (1) Defendant repurchases the Range Rover by paying off Plaintiffs' car loan, refunding Plaintiffs "the money they have paid into the vehicle," and paying "all attorneys' fees and incidental and consequential damages," or (2) Defendant agrees to "a cash and keep settlement of $24,750, inclusive of attorneys fees." (Doc. 11-1) at 2.

## II. Discussion

As a preliminary matter, the Court notes that if Defendant establishes federal diversity jurisdiction based on the New Mexico Lemon Law claim, "the Court may then exercise supplemental jurisdiction over the [MMWA] claim to the extent it is proper to do so." *Matthews v. James Hardie Bldg. Prod., Inc.*, 2017 WL 6994567, at *2 (N.D. Fla.) (citations omitted). Considering this procedural situation, the Court addresses the federal diversity jurisdiction issue first.

    *A. Federal Diversity Jurisdiction Based on New Mexico Lemon Law Claim: $75,000 Amount in Controversy*

        *1. Standards for Determining $75,000 Amount in Controversy*

A federal court has diversity jurisdiction in suits between "citizens of different states" where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). As the party invoking the Court's jurisdiction, Defendant "bear[s] the burden of establishing that the requirements for the exercise of diversity jurisdiction are present." *See Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001) *abrogated on other grounds by Dart*

---

[5] That statement inadvertently indicated "exclusive" of attorneys' fees and costs. The email "contained a grammar error, which should have indicated Plaintiffs would not stipulate to an amount in controversy of $75,000, *inclusive* of attorneys' fees." (Doc. 11) at 3 n.1. Plaintiffs clarify in their reply that they "will stipulate to a recovery that does not exceed $75,000, *exclusive* of attorneys' fees." *Id.*

*Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014). At the same time, the Court recognizes that there is a presumption against removal jurisdiction. *See Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp.*, 149 Fed. Appx. 775, 778 (10th Cir. 2005) *abrogated on other grounds by Dart Cherokee Basin Operating Co., LLC*, 574 U.S. 81 (explaining that "[g]iven the limited scope of federal jurisdiction, there is a presumption against removal, and courts must deny such jurisdiction if not affirmatively apparent on the record").

The amount in controversy is an "estimate of the amount that will be put at issue in the course of the litigation." *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008). In a removal, "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy…." 28 U.S.C. § 1446(c)(2). However, "if the initial pleading seeks … a money judgment, but the State practice … does not permit demand for a specific sum," as in this case, "the notice of removal may assert the amount in controversy…." *Id.* at § 1446(c)(2)(A)(ii). In asserting the amount in controversy, the notice of removal can include reasonable attorney's fees if a statute permits their recovery. *See Miera v. Dairyland Ins. Co.,* 143 F.3d 1337, 1340 (10th Cir.1998) (acknowledging that "[t]he Supreme Court has long held that when a statute permits recovery of attorney's fees a reasonable estimate may be used in calculating the necessary jurisdictional amount in a removal proceeding based upon diversity of citizenship").

"[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Dart Cherokee Basin Operating Co., LLC*, 574 U.S. at 89. Such evidence can include "contentions, interrogatories or admissions in state court," "calculation from the complaint's allegations," "reference to the plaintiff's informal estimates or settlement

6

demands," or other evidence, like affidavits. *McPhail,* 529 F.3d at 954 (citation omitted). The plaintiff, however, "cannot defeat subject matter jurisdiction simply by filing a post-removal stipulation to reduce the amount in controversy…." *Miranda v. Strike,* 2017 WL 3172766, at *1–2 (D.N.M.) (quoting and citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283 (1938); *Miera*, 143 F.3d at 1340).

"[R]emoval of the action is proper on the basis of an amount in controversy asserted [in a notice of removal] if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds" $75,000. 28 U.S.C. § 1446(c)(2)(B). Once the defendant provides evidence of an amount in controversy that exceeds $75,000, "the case stays in federal court unless it is legally certain that the controversy is worth less than" $75,000. *McPhail*, 529 F.3d at 954 (citation omitted).

   2. *Calculating Amount in Controversy Under New Mexico Lemon Law*

A vehicle manufacturer who violates the New Mexico Lemon Law must either (1) "replace the motor vehicle with a comparable motor vehicle" less "a reasonable allowance for use" of the vehicle by the consumer or (2) "accept return of the vehicle … and refund to the consumer the full purchase price including all collateral charges, less a reasonable allowance for the consumer's use of the vehicle." NMSA 1978, § 57-16A-3(B) (2000 Repl. Pamp.). "[A] reasonable allowance for use" is the amount of use "directly attributable to … the consumer prior to his first report of the nonconformity to the manufacturer, agent or dealer and during any subsequent period when the vehicle is not out of service by reason of repair." *Id.* The New Mexico Lemon Law also provides that a prevailing plaintiff is "entitled to receive reasonable attorneys' fees and costs…." NMSA 1978, § 57-16A-9 (2000 Repl. Pamp.).

7

### 3. *Plaintiffs' Arguments*

Although Plaintiffs seek in Count III both categories of damages available under the New Mexico Lemon Law, Plaintiffs focus on the return and refund category of damages in their Motion to Remand. Plaintiffs correctly note that the New Mexico Lemon Law and New Mexico case law do not provide a method for calculating a "reasonable allowance for use." Even so Plaintiffs determine that the "reasonable allowance for use" would be $13,077.65 under the Washington and California lemon laws and $15,693.18 under the Wisconsin lemon law. (Doc. 9) at 11. Plaintiffs arrive at these amounts by using formulas for calculating a reasonable use offset provided in lemon laws enacted by Washington ("reasonable offset for use"), California ("amount directly attributable to use"), and Wisconsin ("reasonable allowance for use"), and accounting for the 18,500 miles the Range Rover accumulated by April 2, 2020. *See* Wash. Rev. Code Ann. § 19.118.041(c) (West 2009); Cal. Civ. Code § 1793.2(d)(2)(C) (West 2012); Wisc. Stat. Ann. § 218.0171(2)(b) (West 2016).

Plaintiffs argue that the appropriate formula to calculate the amount in controversy attributable to the New Mexico Lemon Law claim is as follows: $84,828.00 (the purchase price of the Ranger Rover) - $58,591.00 (the Kelley Blue Book trade-in value for a 2018 Range Rover, in good condition, with 18,500 miles, i.e., the present value of the defective vehicle) = $26,237.00; then, $26,237.00 - $13,077.65 (the "reasonable allowance for use" calculated under the Washington and California lemon laws) = $13,159.35.[6]

---

[6] The Court notes that this formula is used in calculating damages under the MMWA when the vehicle is returned to the dealer: "the price of a replacement vehicle, minus both the present value of the allegedly defective car and the value that the plaintiff received from the use of the allegedly defective car." *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 406 (7th Cir. 2004).

This proposed formula deviates, however, from the New Mexico Lemon Law's formula for the return and refund category of damages by subtracting the present value of the defective vehicle from the full purchase price of the vehicle in addition to the "reasonable allowance for use." As described above, the New Mexico Lemon Law requires that to determine damages under the return and refund category of damages, one subtracts only the "reasonable allowance for the consumer's use of the vehicle" from the full purchase price. Plaintiffs further do not include future estimated attorneys' fees in determining the amount in controversy because of the speculative nature of such a determination. Therefore, Plaintiffs claim that the total amount in controversy attributable to the New Mexico Lemon Law claim is $13,159.35, well below the $75,000 amount in controversy needed to invoke diversity jurisdiction.

In addition, Plaintiffs note that prior to filing the Complaint they presented Defendant with a cash settlement demand of $19,500, inclusive of attorneys' fees, and after removal they presented Defendant with a cash and keep settlement demand of $24,750, inclusive of attorneys' fees. Plaintiffs argue that the settlement demands constitute further evidence of an amount in controversy well below $75,000.

### 4. *Defendant's Arguments*

Defendant responds by noting that Plaintiffs have stated that they will stipulate to a recovery not to exceed $75,000, exclusive of attorneys' fees. Defendant further argues that since Plaintiffs did not agree to cap attorneys' fees at $30,000, Plaintiffs concede that attorneys' fees could exceed $30,000. By adding both the $75,000 cap on damages and the estimated $30,000 in attorneys' fees, Defendant concludes that the amount in controversy exceeds $75,000. In addition, Defendant asserts that Plaintiffs' references to the Kelley Blue Book trade-in values

amount to an improper post-removal attempt to reduce the amount in controversy from the $84,828 purchase price to $58,591 or $55,964.

Notwithstanding the above arguments, Defendant calculates damages under the New Mexico Lemon Law return and refund category of damages, as Plaintiffs do. To make that calculation, Defendant employs the following formula: $84,828.00 (the purchase price of the Range Rover) - $13,077.65 (the "reasonable allowance for" use calculated under the Washington and California lemon laws) = $71,750.35. Alternatively, Defendant subtracts a "reasonable allowance for use" amount of $15,693.18, calculated under the Wisconsin lemon law, from the $84,828.00 purchase price to obtain damages of $69,134.82. Defendant then adds reasonable attorneys' fees of $5,000 to $6,000, to the damages of $71,750.35, and the alternative damages of $69,134.82, to exceed the $75,000 amount in controversy.

     *5. Analysis*

First, the Court rejects Defendant's amount in controversy calculation that is based on Plaintiffs' stipulation to not seek a recovery that exceeds $75,000 and on Plaintiffs' failure to agree to cap attorneys' fees at $30,000. The Court finds this argument unpersuasive because it is speculative and relies on an improper post-removal stipulation.

Second, the Court rejects Defendant's assertion that the Kelley Blue Book references constitute an improper post-removal attempt to reduce the amount in controversy. Although the Kelley Blue Book trade-in values reflect post-removal present values as of April 2, 2020, the Court notes that Defendant removed the case less than a month earlier, on March 5, 2020. Defendant has not demonstrated that the Kelley Blue Book trade-in values decreased in any significant way in the 28 days the Notice of Removal was filed, especially considering Plaintiffs ceased driving the Range Rover as of August 2019.

Third, the Court acknowledges that it may consider Plaintiffs' settlement offers in determining the amount in controversy "if [they] appear[] to reflect a reasonable estimate of the [Plaintiffs'] claim" under the New Mexico Lemon Law. *McPhail*, 529 F.3d at 956. The Court, however, questions the reasonableness of the settlement offers when one applies the method for calculating the return and refund category of damages provided in the New Mexico Lemon Law.

With respect to that category of damages, the New Mexico Lemon Law does not require an offset based on the present value of the Range Rover, as reflected in the Kelley Blue Book trade-in values, to calculate those damages. Instead, the New Mexico Lemon Law requires only an offset for a "reasonable allowance for use." Here, Plaintiffs cite with approval the reasonable use offset formulas set forth in the Washington, California, and Wisconsin lemon laws to calculate a "reasonable allowance for use." Pursuant to the New Mexico Lemon Law, those "reasonable allowance for use" calculations are subtracted from the purchase price of the Range Rover, which results in estimated damages of $71,750.35 or $69,134.82, damages far above Plaintiffs' settlement offers of $19,500.00 and $24,750.00, inclusive of attorneys' fees. In light of those estimated damages, the Court finds that Plaintiffs' settlement offers are not reasonable. Plaintiff would have the Court ignore the purchase price and accept the settlement offers alone, but the purchase price is integral in valuing this controversy. The Court, therefore, will not rely on Plaintiffs' settlement offers or on Plaintiffs' New Mexico Lemon Law damages calculation to determine if Defendant has established the $75,000 amount in controversy by a preponderance of the evidence.

Fourth, the Court rejects Plaintiffs' argument that Defendant should not consider future estimated attorneys' fees in establishing the amount in controversy. The Tenth Circuit explicitly allows for the consideration of future estimated attorneys' fees. *See Miera*, 143 F.3d at 1340

11

(observing that "when a statute permits recovery of attorney's fees a reasonable estimate may be used in calculating the necessary jurisdictional amount"). Indeed, "[i]n calculating reasonable attorney's fees, the Court 'will estimate the reasonable attorney's fees through trial' because entitlement to attorney's fees are triggered upon Plaintiff prevailing at trial." *Bezona v. Essentia Ins. Co.*, 2020 WL 373280, at *3 (D. Colo.) (citation omitted). "Considering the realities of modern law practice and the complexities of this case," it would be reasonable to expect Plaintiffs to incur at least $6,000 in attorneys' fees through trial. *See Miera*, 143 F.3d at 1340. Adding those future estimated attorneys' fees to the estimated New Mexico Lemon Law damages of $71,750.35, or $69,134.82, results in an amount in controversy exceeding $75,000.

In sum, Defendant has shown by a preponderance of the evidence that the amount in controversy exceeds $75,000, and that it does not appear to a legal certainty that the New Mexico Lemon Law claim is really for less than $75,000. Hence, the Court has federal diversity jurisdiction over this matter. The next question, then, is whether the Court should exercise supplemental jurisdiction over the MMWA claims.

### B. Supplemental Jurisdiction Over the MMWA Claims

This Court has discretion to exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); *see also Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (noting that exercise of supplemental jurisdiction is discretionary). Federal and state claims are part of the same case or controversy if they "derive from a common nucleus of operative fact." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). "To satisfy this requirement, '[a] loose factual

connection between the claims is generally sufficient.'" *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 683 (7th Cir. 2014) (citation omitted).

In this case, the New Mexico Lemon Law claim and the MMWA claims arise out of the same factual allegation, i.e., Defendant's dealer sold Plaintiffs a defective Range Rover. Hence, a more than loose factual connection exists between the New Mexico Lemon Law claim and the MMWA claims. Accordingly, the claims derive from a common nucleus of operative fact. As such, the claims are all part of the same case or controversy.

Furthermore, none of the statutory bases for a court to decline to exercise supplemental jurisdiction exist in this case. First, the MMWA claims do not raise novel or complex issues of state law. *See* 28 U.S.C. § 1367(c)(1). Second, the MMWA claims do not predominate over the New Mexico Lemon Law claim. *See* 28 U.S.C. § 1367(c)(2). Third, the Court has not dismissed the New Mexico Lemon Law claim, the claim over which the Court has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3). Finally, the Court finds no "exceptional circumstances" or "other compelling reasons" to decline supplemental jurisdiction over the MMWA claims. *See* 28 U.S.C. § 1367(c)(4).

For the foregoing reasons, the Court, in its discretion, will exercise supplemental jurisdiction over the MMWA claims. That being the case, the estimated damages under Plaintiffs' MMWA claims need not exceed the $50,000 amount in controversy required under the MMWA to establish federal jurisdiction over those claims. *See Allen v. Toyota Motor Sales, U.S.A., Inc.*, 155 Fed. Appx. 480, 482 n. 2 (11th Cir. 2005) (holding that it need not consider whether MMWA provides "alternative source of federal jurisdiction" since it concluded that district court had diversity jurisdiction). Having determined that the Court has federal jurisdiction over all of Plaintiffs' claims, the Court will deny the Motion to Remand.

IT IS ORDERED that Plaintiffs' Motion to Remand to State Court and Memorandum in Support (Doc. 9) is denied.

_____
UNITED STATES DISTRICT JUDGE